UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

JEREMY SHEPHERD, on behalf of himself   :
and all others similarly situated,              :   **MEMORANDUM DECISION AND**
                                               :   **ORDER**
                                               :
                          Plaintiff,      :   21-cv-5862 (BMC)
                                               :

           - against -                 :
                                               :

BELKIN INTERNATIONAL, INC. and     :
WALMART, INC.,                        :
                                               :

                   Defendants.    :
------------------------------------------------------------ X

**COGAN**, District Judge.

The only substantial question raised by defendants' motion to compel arbitration is whether the retailer of the product, defendant Walmart, a non-signatory to the arbitration agreement, can compel plaintiff to arbitrate his fraud claims against it based on the arbitration agreement between plaintiff and the defendant manufacturer, Belkin. I hold that Walmart may avail itself of the arbitration clause.

## BACKGROUND

Plaintiff bought a $35 wireless router manufactured by defendant Belkin and sold by defendant Walmart. To complete the installation of software for the router, without which the router would not work, plaintiff had to follow directions on a Belkin website. On that website, he was required to check a box next to a hyperlinked phrase: "I have read and accept the License Terms for using this software." Only by checking that box would he be allowed to proceed to the next step of the installation. By clicking on the hyperlinked phrase, he would be taken to Belkin's End User Licensing Agreement ("EULA"), which displayed all the terms of the license.

The EULA first urged the consumer to read it carefully:

> PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING
> OR USING THIS PRODUCT.  BY CHECKING THE BOX OR CLICKING
> THE BUTTON TO CONFIRM YOUR ACCEPTANCE WHEN YOU FIRST
> INSTALL THE SOFTWARE, YOU ARE AGREEING TO ALL THE TERMS
> OF THIS AGREEMENT.  ALSO, BY USING, COPYING OR INSTALLING
> THE SOFTWARE, YOU ARE AGREEING TO ALL THE TERMS OF THIS
> AGREEMENT.  IF YOU DO NOT AGREE TO ALL OF THESE TERMS, DO
> NOT CHECK THE BOX OR CLICK THE BUTTON AND/OR DO NOT USE,
> COPY OR INSTALL THE SOFTWARE, AND UNINSTALL THE SOFTWARE
> FROM ALL DEVICES THAT YOU OWN OR CONTROL.  IF YOU DO NOT
> ACCEPT THE TERMS OF THIS AGREEMENT AND YOU PURCHASED A
> PRODUCT CONTAINING THE SOFTWARE FROM AN AUTHORIZED
> RETAILER, RESELLER OR APP STORE (AS DEFINED BELOW), YOU
> MAY BE ELIGIBLE TO RETURN THE PRODUCT FOR A REFUND,
> SUBJECT TO THE TERMS AND CONDITIONS OF THE APPLICABLE
> RETURN POLICY.

Then, on the very first page of the EULA, the consumer is advised that there is a binding

arbitration provision and class action waiver:

> THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION AND BINDING
> ARBITRATION PROVISION IN SECTION 17, INCLUDING A CLASS
> ACTION WAIVER THAT AFFECTS YOUR RIGHTS WITH RESPECT TO
> DISPUTES YOU MAY HAVE WITH BELKIN.  YOU MAY OPT OUT OF
> SUCH ARBITRATION AND CLASS ACTION WAIVER AS PROVIDED IN
> SECTION 17.

The EULA contained the following arbitration provision:

> YOU AND BELKIN EACH ACKNOWLEDGE AND AGREE THAT ANY
> CLAIM, DISPUTE OR CONTROVERSY BETWEEN YOU AND BELKIN
> ARISING OUT OF OR RELATING TO (1) THIS AGREEMENT, INCLUDING
> THE VALIDITY OF THIS SECTION, AND (2) YOUR USE OF SOFTWARE
> AND/OR PRODUCT(S) UNDER THIS AGREEMENT (COLLECTIVELY,
> THE "DISPUTE") SHALL BE RESOLVED EXCLUSIVELY AND FINALLY
> BY BINDING ARBITRATION ADMINISTERED BY A MUTUALLY
> AGREEABLE NATIONALLY RECOGNIZED ARBITRATION AUTHORITY
> PURSUANT TO ITS CODE OF PROCEDURES THEN IN EFFECT FOR
> CONSUMER-RELATED DISPUTES. YOU UNDERSTAND THAT WITHOUT
> THIS PROVISION YOU WOULD HAVE HAD A RIGHT TO LITIGATE A
> DISPUTE THROUGH A COURT BEFORE A JURY OR JUDGE, AND THAT
> YOU HAVE EXPRESSLY AND KNOWINGLY WAIVED THOSE RIGHTS

2

AND AGREE INSTEAD TO RESOLVE ANY DISPUTES THROUGH
BINDING ARBITRATION IN ACCORDANCE WITH THE PROVISIONS OF
THIS SECTION.

The EULA also provided that it was governed by California law.

Plaintiff alleges his router does not work at the advertised speed of "up to 1,000 Mbps."

He therefore brought this putative class action under the laws of fifty states contending that

Belkin and Walmart defrauded him into buying it by misrepresenting the speed.

## DISCUSSION

### I.     Plaintiff must arbitrate his claims against Belkin

The law concerning contract formation is too well settled to require discussion.  With

regard to clickwrap agreements, the law in both California and New York is equally clear: an

arbitration clause in a clickwrap agreement is valid.  See, e.g., In re Holl, 925 F.3d 1076, 1085

(9th Cir. 2019); Bassett v. Elec. Arts Inc., No. 13-cv-04208, 2015 WL 1298644, at *4 (E.D.N.Y.

Feb. 9, 2015).  As the Second Circuit recently noted, "[w]e have consistently upheld such

agreements because the user has affirmatively assented to the terms of the agreement by clicking

'I agree' or similar language."  Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 103

(2d Cir. 2022).  "Courts routinely uphold clickwrap agreements" which "require users to click an

'I agree' box after being presented with a list of terms and conditions of use . . . for the principal

reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"

Meyer v. Uber Techs., Inc., 868 F.3d 66, 75 (2d Cir. 2017); accord, Cimillo v. Experian Info.

Sols., Inc., No. 21-cv-9132, 2023 WL 2473403 (S.D.N.Y. March 13, 2023); Houtchens v.

Google, No. 22-cv-02638, 2023 WL 122393 (N.D. Cal. Jan. 26, 2023).

In <u>Zachman</u>, the Second Circuit remanded the case for further proceedings because the online merchant had not provided evidence that the terms and conditions of the agreement were conspicuously displayed.  That is not the case here.  Belkin has submitted screenshots of the webpages that plaintiff had to scroll through to download his software.  The page requiring his agreement to the terms and conditions appeared like this:



It could hardly have been more conspicuous.  There's nothing in the box but a hyperlink to the License Terms alongside a circle that plaintiff had to check.  Again, if he didn't check that he had read the terms, he would not have been permitted to proceed.

Plaintiff responds by trying to separate the hardware (router) from its required software and argues that the terms of the EULA only apply to the latter, not the former.  But the EULA arbitration clause expressly covers the router as well as the software by defining its coverage as over: "ANY CLAIM, DISPUTE, OR CONTROVERSY BETWEEN YOU AND BELKIN

ARISING OUT OF OR RELATING TO . . . YOUR USE OF SOFTWARE AND/OR

**PRODUCT(S)** UNDER THIS AGREEMENT." (emphasis added). The argument also ignores

the common-sense reality that the hardware and software operate together; without one, the other

is useless.

Second, plaintiff says he cannot have assented to arbitration because the software

licensing agreement is hidden at the end of a 17-page EULA. He cites no cases for the

proposition that length alone invalidates an arbitration clause. In any event, the length does not

reduce the consumer's ability to read it, and, here, the reference to the arbitration clause is on the

very first page in upper case. Even plaintiff's perfunctory affidavit does not deny that he was

compelled to confirm that he had read the EULA before he accepted it – he merely avers that he

"did not see any agreement" relating to the hardware. If he didn't see the mention of

"SOFTWARE AND/OR PRODUCTS(S)," then he made a conscious choice not to see it. Of

course, I recognize that few people actually read these sorts of agreements, but one cannot sign a

contract and then claim exemption from its terms due to ignorance.

Third, plaintiff asserts that the arbitration clause should be ignored because this is not just

a fraud – it is a bad fraud, maybe a really bad fraud. Compared to the innumerable fraud cases

that pass through this Court, a manufacturer's overstatement about the speed of a network router,

although potentially fraudulent, is not all that serious. But more importantly, the severity of a

fraud obviously has nothing to do with the enforceability of an arbitration agreement.

## II.    **Plaintiff must arbitrate his claims against Walmart**

This issue is more nuanced. Significantly, the arbitration clause at issue does not

expressly reference retailers like Walmart that sell Belkin products. It obviously could have.

Nevertheless, a non-signatory like Walmart may avail itself of an arbitration agreement under

certain circumstances.  Courts have articulated several sometimes-overlapping theories for this: equitable estoppel; corporate relationship; "intertwining" of claims against the signatory and non-signatory; agency; and intended third-party beneficiary status.

The Second Circuit most recently discussed its precedent on this issue in Doe v. Trump Corp., 6 F.4th 400 (2d Cir. 2021).  There, the plaintiffs had entered into a multi-level marketing relationship with a company called ACN based on alleged misrepresentations and non-disclosures from the Trump defendants.  The plaintiffs' agreements with ACN had an arbitration clause, but the plaintiffs had no contractual relationship with the Trump defendants, and the question was whether the Trump defendants could avail themselves of that arbitration clause.

The Court of Appeals set forth all of the guiding principles for this inquiry.  First, even though "a party … cannot be required to submit to arbitration any dispute which it has not agreed to submit," the Court has recognized "a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel." Id. at 412 (quoting Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126 (2d Cir. 2010) and Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir. 2007)).  To invoke equitable estoppel, the non-signatory must satisfy two criteria: (1) "the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations," Doe, 6 F.4th at 412 (quoting Choctaw Generation Ltd. v. American Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001); and (2) "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Doe, 6 F.4th at 412-13 (internal quotations omitted).  The Court noted that this second requirement will usually be met in cases involving corporate

6

affiliates, subsidiaries, agents, or "other related business entities" and in "a limited number of

[other] circumstances," such as when "the signatory seeking to avoid arbitration treated the other

signatory and nonsignatory as interchangeable with respect to its rights and responsibilities under

the relevant contract."  Id. at 413 (quoting Ross, 547 F.3d at 144-45).

The Second Circuit declined to allow the Trump defendants a free ride on the arbitration

agreement between plaintiffs and ACN.  The Court held that the Doe plaintiffs did not have "a

close relationship among the signatories and non-signatories such that it can reasonably be

inferred that the signatories had knowledge of, and consented to, the extension of their agreement

to arbitrate to the non-signatories."  Doe, 6 F.4th at 414.  In so holding, the Court of Appeals

distinguished the facts from its earlier decision in Ragone.  There, the plaintiff employee worked

for a company, the defendant Atlantic Video, which seconded her to ESPN.  She later sued

Atlantic Video and ESPN for employment discrimination allegedly perpetrated by ESPN

employees.  Her employment agreement with Atlantic Video had an arbitration clause but was

not signed by ESPN, nor was ESPN mentioned in it.  But because ESPN acted in all respects as

plaintiff's employer, and when she "was hired by [Atlantic Video], she understood ESPN to be,

to a considerable extent, her co-employer," the Court held that ESPN could invoke the arbitration

clause.  Id. at 127; see also Franklin v. Community Regional Medical Center, 998 F.3d 867 (9th

Cir. 2021) (hospital could invoke arbitration clause in agreement between nurse and staffing

agency in wage litigation).  The Doe panel distinguished Ragone, noting that unlike the plaintiff

employee in Ragone, the Doe "plaintiffs were unaware of any corporate relationship between

signatory ACN and the non-signatory defendants."  Doe, at 6 F.4th at 414.

There are surprisingly few cases involving attempts by retailers to invoke arbitration

clauses in consumer agreements with manufacturers.  The Ninth Circuit's decision in Murphy v.

DirecTV, Inc., 724 F.3d 1218 (9th Cir. 2013), however, is instructive.  In Murphy, consumer

plaintiffs had obtained satellite TV service from DirecTV and the equipment to use the service

from Best Buy.  Under their customer agreement with DirecTV, they agreed to arbitration. The

plaintiffs alleged that DirecTV and Best Buy had defrauded them into thinking they were

engaging in a finance purchase of the equipment outright from Best Buy when, in fact, DirecTV

and Best Buy had structured the transaction so that the equipment was merely leased, and the

lease had onerous fees and terms.

The Ninth Circuit had little problem applying the arbitration clause to the plaintiffs'

claims against DirecTV.  As to Best Buy, however, the Court held that equitable estoppel did not

apply:

> The Customer Agreement is factually irrelevant to Plaintiffs' claims against Best
> Buy, which charge misrepresentations to customers at the point of sale.  The
> complaint is replete with allegations of deceit by Best Buy that have nothing to do
> with the Customer Agreement.  Among other allegations, Plaintiffs claim that
> Best Buy "sold DirecTV Equipment at Best Buy stores in a manner that
> reasonable consumers would find indistinguishable from any other sale which
> occurs at Best Buy"; that "Best Buy receipts given to customers memorializing
> the transaction contained the word 'SALE' at the top of the receipt in bold,
> capitalized letters"; and that oral "[r]epresentations were made to some purchasers
> that the DirecTV Equipment was for sale." None of these allegations rely on the
> Customer Agreement or attempt to seek any benefit from its terms.

Id. at 1230.  The Court went on to reject Best Buy's alternative theories of agency and third-

party beneficiary contract inclusion.

I do not read Murphy as precluding a retailer from invoking the arbitration clause of the

manufacturer from which the retailer obtained the product.  Rather, it is a fact-sensitive question

that examines the relationship between the retailer and the plaintiff and then compares that to the

relationship between the manufacturer and the plaintiff.  Here, applying the two-factor

framework, I conclude that Walmart may invoke the arbitration clause.

First, plaintiff's complaint itself confirms that plaintiff's claims against Belkin and Walmart are "intimately founded in and intertwined with the underlying contract obligations," Choctaw, 271 F.3d at 406.  In fact, they are not merely intertwined – they are identical.  The complaint has six claims for relief: (1) violation of state consumer protection laws; (2) breach of contract; (3) breach of implied warranty of merchantability; (4) negligent misrepresentation; (5) unjust enrichment; and (6) fraud.  In asserting those claims, plaintiff does not distinguish in any way between the two defendants.  Not even mentioning their names, each claim asserts essentially that "defendants did this, so they are liable" or "defendants did that, so they are liable."

Similarly, the incorporated facts as to each claim in the complaint treat both defendants as having made identical misrepresentations.  The complaint includes a screenshot from Belkin's website touting the product that contains the alleged misrepresentation as to the router's speed and a screenshot of Walmart's website that repeats *verbatim* the alleged misrepresentation from Belkin's website.  It then reverts to referring to "defendants" having committed the various wrongful acts by making the misrepresentation.

As to the second factor, it is true that Belkin and Walmart are not corporate affiliates, which is, of course, the easiest way for a nonsignatory to invoke an arbitration clause.  But the relationship they did have, manufacturer and retailer, seems sufficient under these circumstances to put plaintiff on notice that if he had a problem with the router, he would have the same rights and limitations on his rights against one defendant as the other; his complaint, again, confirms that understanding.  Here, like in Ragone and unlike in Doe, plaintiff was aware of a "corporate relationship between signatory [Belkin] and [] non-signatory" Walmart at the time he agreed to arbitrate, and his complaint "treat[s] [Belkin] and [Walmart] as at least somewhat

9

interchangeable with respect to the [his] rights and responsibilities." Doe, 6 F.4th at 414

(distinguishing Ragone).

This case is not like Murphy or Toyota or even Doe (where the plaintiffs did not even sue

the signatory to the arbitration agreement).  In those cases, the non-signatory was accused of

wrongs independent of those committed by the signatory.  In contrast, Walmart was a true

middleman.  It added nothing to this transaction except a price point and an internal portal to

display what Belkin had said about the product.  Walmart's alleged misrepresentation was

simply received from Belkin and passed through.  Since plaintiff is charged with knowledge that

he agreed to arbitrate with Belkin, he cannot avoid being charged with knowledge that he agreed

to arbitrate with Walmart for committing exactly the same conduct for precisely the same

product.  On the facts of this case, the manufacturer-retailer relationship between Belkin and

Walmart makes Walmart the kind of "other related business entit[y], Doe, 6 F.4th at 413, that

can invoke the arbitration clause between plaintiff and Belkin.

### CONCLUSION

Defendants' motion to compel arbitration is granted and this action is stayed, provided

that plaintiff shall advise the Court that he has commenced arbitration within the next 60 days,

failing which the case will be dismissed with prejudice. The stay shall be implemented by

administrative closure, subject to reinstatement within 90 days of any final arbitration award

should either side require further relief.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       July 24, 2023

10